[No. 51495-0. En Banc. December 26, 1985.]

THE STATE OF WASHINGTON, *Petitioner,* v. NOYES
RUSSELL HOWARD, *Respondent,* YAKIMA
COUNTY, *Intervenor.*

*Kenneth O. Eikenberry, Attorney General,* and *Gregory
P. Canova, Senior Assistant,* for petitioner.

*Susan L. Hahn, Schwab, Kurtz & Hurley, Kenneth W. Raber,* and *Kirschenmann, Devine, Fortier & Raber, Inc., P.S.,* for respondent.

*Jeffrey C. Sullivan, Prosecuting Attorney,* for intervenor.

*Michael C. Redman* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae for intervenor.

DURHAM, J.—In this criminal case filed by the Attorney General pursuant to RCW 43.10.232, we are asked to decide if the State or the County is responsible for the indigent defendant's attorney and expert witness fees. We hold the State responsible for these costs.

This controversy arose on November 9, 1984, when the Attorney General charged Noyes Russell Howard (Noyes) with the first degree murder of his wife, Donna Howard. Donna was killed in 1975, at which time the Yakima County Sheriff's Department concluded that her death was accidental. The purported cause of death was a kick to the head by a horse. In 1976, Donna's body was exhumed at her family's request for examination by a private pathologist. He also concluded that her death was probably accidental. In 1980, while in the process of divorce, Noyes's second wife told the Yakima County Prosecutor that Noyes had told her that he had killed Donna. However, since most of her testimony was inadmissible due to the marital privilege, the prosecutor concluded that there was not sufficient evidence to prosecute Noyes.

In 1981, Donna's family contacted the Governor's Office to ask him to intervene. The Governor, in turn, requested the Attorney General to investigate. The Attorney General's 2-year investigation elicited sufficient evidence to proceed with Noyes's prosecution.

In 1984, the Attorney General asked the Yakima County Prosecutor if he wanted to prosecute the case. Although the

prosecutor agreed there was now sufficient evidence to file a charge, he informed the Attorney General he did not think it was appropriate for his office to prosecute the case because one of the deputy prosecutors would probably be called as a witness. In addition, he noted that the state attorney was more familiar with the evidence and that Donna's family was dissatisfied with the prosecutor's handling of the case. The Attorney General filed the charges on November 9, 1984.

Noyes was found to be indigent and two attorneys were appointed to represent him. Because of the complexity of the case, his attorneys petitioned for, and were granted, compensation in excess of the amount provided under the County public defender contract to handle the defense. The trial court also authorized expenditures for expert witnesses. At oral argument, defense counsel estimated that the expenses for the defense would total in excess of $50,000. The trial court ruled that the State, rather than the County indigent defense fund, was responsible for paying these costs. The State sought discretionary review of this order by this court. Noyes's trial has been stayed pending resolution of this matter.

We base our conclusion that the State is responsible for paying the assigned counsel and expert witness costs on three statutes: RCW 43.10.230, RCW 10.01.110, now repealed, and Initiative 62, codified as RCW 43.135. RCW 43.10.230 authorizes the Attorney General to file criminal prosecutions. However, there is nothing in the language of this statute which indicates whether the state or county is responsible for paying the attorney fees of indigent defendants charged pursuant to this statute. RCW 43.135 prohibits the Legislature from imposing the costs of new programs or increased levels of service under existing programs on the counties. Intervenor, Yakima County, argues that this statute requires the state, and not the county, be responsible for all expenses, including indigent defendants' attorney fees resulting from the expansion of the Attorney General's prosecuting authority. RCW 10.01.110 places responsibility

for paying indigent defendants' attorney fees with the counties. While the State argues that this statute should govern, the County asserts that RCW 10.01.110 has been repealed.

Prior to 1981, the Attorney General could assist a local prosecutor in a criminal investigation but generally did not have independent authority to file a criminal action. The only circumstance under which the Attorney General had independent prosecutorial authority was when an Attorney General's investigation indicated that the criminal laws had been improperly enforced in a county, and that the local prosecutor had failed to remedy the situation after being instructed to do so by the Attorney General. RCW 43.10-.090. In 1981, the Legislature enacted RCW 43.10.230 *et seq.* which expanded the Attorney General's authority to prosecute crimes. RCW 43.10.232 provides:

. The attorney general shall have concurrent authority and power with the prosecuting attorneys to investigate crimes and initiate and conduct prosecutions upon the request of or with the concurrence of any of the following:
(1) The county prosecuting attorney of the jurisdiction in which the offense has occurred;
(2) The governor of the state of Washington; or
(3) A majority of the committee charged with the oversight of the organized crime intelligence unit.
Such request or concurrence shall be communicated in writing to the attorney general.

The Attorney General acted under subsection (2) of this statute when filing the charges in this case. Unfortunately, there is nothing in the language or legislative history of RCW 43.10.230 to indicate if the state or the county is to pay defense expenses when the Attorney General files a criminal charge pursuant to this statute.

■ Our decision to place responsibility with the State for the costs of attorney fees for indigent defendants charged by the Attorney General is based primarily on our analysis of RCW 43.135. Passed in 1979, this statute limits the growth rate of state tax revenues. RCW 43.135.040. It

does not limit the growth rate of local tax revenues. To prevent the Legislature from avoiding the effects of the state tax revenue limit by shifting responsibility for funding state programs to local governments, RCW 43.135-.060(1) provides:

> The legislature shall not impose responsibility for new programs or increased levels of service under existing programs on any taxing district unless the districts are reimbursed for the costs thereof by the state.

The terms "program" and "service" as used in this statute are synonymous and denote measures designed to accomplish specific public goals and to benefit the public. *Seattle v. State,* 100 Wn.2d 16, 24–25, 666 P.2d 359 (1983). The public benefit must be measurable or quantifiable or RCW 43.135 will not apply. AGO 24 (1980). For example, the State would be required to reimburse counties if legislation required the addition of superior court judges because that would increase the level of judicial service provided to the public. AGO 3 (1980). In contrast, the State would not be required to reimburse counties if legislation increased employer contributions to the Public Employees' Retirement System or required firefighters to meet minimum medical and health standards. Although such legislation would result in costs to local governments, it does not directly add to or increase services to the public. AGO 24 (1980). Similarly, the substitution of de novo review of municipal court decisions by appellate review of an electronic recording of municipal court proceedings was not found to be new or increased services. Such a change is a modification in the way in which the same level of service is provided. *Seattle v. State, supra* at 25.

Here, by enacting RCW 43.10.230, the Legislature has directly increased the level of services provided to the public. By authorizing the Attorney General to file criminal charges, the Legislature has allocated additional personnel and resources to the prosecution of crimes. Moreover, this program is designed to allow the Attorney General to file criminal charges in cases that would not otherwise be filed

because of financial or political constraints on a local prosecutor.

The State has willingly assumed responsibility for the costs of prosecuting these additional cases. However, an intrinsic part of the prosecution of every criminal case filed against an indigent defendant is the provision of assigned counsel to represent that person. *Gideon v. Wainwright,* 372 U.S. 335, 344–45, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963). A criminal prosecution cannot proceed if the defendant does not have counsel. As a portion of the direct costs of providing an increased level of prosecutorial services to the public, the expense of providing a defense cannot, consistent with RCW 43.135, be shifted by the Legislature to the county.

In addition, we are persuaded by the argument of the amicus curiae on behalf of Washington Association of Prosecuting Attorneys that the Attorney General's decision to file a criminal charge should be subject to the same type of constraints as limit local prosecutors. The expenses of providing for an indigent's defense are a necessary expense of charging a crime, and the ability to shift responsibility for these expenses to another level of government camouflages the true costs of the decision. Resources are limited, and by placing responsibility for all direct costs of a criminal case with the official making the charging decision, we encourage wise and efficient allocation of these limited resources.

At the time RCW 43.10.230 was enacted, RCW 10.01.110 governed payment of assigned counsel. It provided:

> Whenever a defendant shall be arraigned or first appear before a court, magistrate or justice of the peace upon the charge that he has committed *any felony, and the defendant has requested the court to appoint counsel to assist in his defense,* and shall by his own oath or such other proof as may be required satisfy the court that he is unable, by reason of poverty, to procure counsel, the court shall appoint counsel, not exceeding two, for such defendant. *Counsel so appointed shall be paid* a reasonable amount as attorney's fees together with reimbursement of actual expenses necessarily incurred upon

the court's order *by the county in which such proceeding is had: Provided,* That this section shall also apply to such other proceedings and at such other time as may be constitutionally required.

(Italics ours.) Thus, the county would have been responsible for paying defendant's assigned counsel under the terms of this statute. However, RCW 10.01.110 has since been repealed. Laws of 1984, ch. 76, § 20, p. 461.

The State argues that the Legislature intended to repeal only those provisions of RCW 10.01.110 for which there is a parallel court rule, *i.e.,* those provisions for the appointment of counsel for indigent defendants. This would not include the provisions assigning responsibility for payment of appointed counsel to the counties. We do not find this argument persuasive. RCW 10.01.110 was specifically identified by code section and session law citation and repealed. Laws of 1984, ch. 76, § 20, p. 461. Other statutes affected by other sections of this act were amended rather than repealed. Although the Legislature may not have intended to repeal the provision governing which level of government is responsible for paying appointed counsel, it certainly did so. To hold otherwise would significantly complicate the process by which the Legislature repeals statutes and leave the validity of a repeal in doubt until confirmed by this court.

We also reject the State's contention that the title of the act which repealed RCW 10.01.110 was inadequate to meet the requirement found in article 2, section 19 of our state constitution that the subject of an act be expressed in its title. The title of a bill may be general and is constitutionally adequate if it gives notice of an act's content so as to reasonably lead to an inquiry into those contents. *Brewster Pub. Schs. v. PUD 1,* 82 Wn.2d 839, 846, 514 P.2d 913 (1973). The title of Laws of 1984, ch. 76, reads: "AN ACT Relating to the amendment or repeal of statutes superseded by court rule . . ." This is sufficient to place interested parties on notice that the Legislature is repealing statutes concerning court procedure.

Because there is currently no statute governing the payment of appointed counsel, we have been asked to analogize to RCW 4.84.170, the costs statute. This statute awards costs against the governmental unit for the use of which an action was brought. *See, e.g., Thurston Cy. v. Gorton*, 85 Wn.2d 133, 520 P.2d 309 (1975); *State v. Agren*, 32 Wn. App. 827, 829–30, 650 P.2d 238 (1982). However, "costs," as defined in that statute, specifically exclude attorney fees and expert witness fees in excess of statutory fees. RCW 4.84.010. We will, therefore, not apply the statute here by analogy.

Yakima County has requested that the State be required to pay only the extraordinary costs involved in the defense of this case. Extraordinary costs are the variable costs that are not normally covered by the public defender contract or the superior court and clerk's budget. They may include the additional counsel fees awarded, the defense travel costs to depose the State's numerous expert witnesses, and the expert witness fees for the defense expert witnesses. We conclude that the State must pay Yakima County the extraordinary costs incurred by the defense. The trial court's order requiring the State to pay all of Noyes's attorney fees and expert witness expenses is reversed, and this case is remanded for a determination of Noyes's extraordinary costs.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.

After modification, further reconsideration denied June 10, 1986.